**JANE L., et al., Plaintiff,**

v.

**Norman BANGERTER,
et al., Defendants.**

**Civil No. 91–C–345G.**

United States District Court,
D. Utah,
Central Division.

Jan. 5, 1996.

———

Joel G. Momberger, Paul M. Durham, Durham Evans Jones & Pinegar, Salt Lake City, UT, Mary Anne Q. Wood, Wood Quinn & Crapo LC, Salt Lake City, UT, Jan C. Graham, Utah Attorney Generals Office, Salt Lake City, UT, James R. Soper, Utah Attorney Generals Office, Salt Lake City, UT, for defendants.

Jean M. McCarroll, Berle, Kass & Case, New York City, Janet Benshoof, The Center for Reproductive Law & Policy, New York City, Roger Evans, Planned Parenthood Federation of America, New York City, Allen Howard Lundgren, Keller & Lundgren, L.C., Salt Lake City, UT, Jeffrey R. Oritt, Cohne Rappaport & Segal, Salt Lake City, UT, Julie Mertus, American Civil Liberties Union, New York City, for plaintiffs.

### ORDER ON REMAND IN RE ATTORNEY'S FEES (JANE L. V)

J. THOMAS GREENE, District Judge.

This matter is before the court on remand by the Tenth Circuit for recalculation of attorney's fees in accordance with opinions issued by that court concerning error in the lower court's substantive decisions as well as its award of attorney's fees to defendants. As instructed by the Tenth Circuit, this requires reversal of reductions in the lodestar calculation on account of failure to prevail on alternative legal theories, and reconsideration of limited success as determined by the lower court. It also requires reversal of this

court's award of attorney's fees and expenses to defendants.

## I.

## LODESTAR CALCULATION

This court arrived at a lodestar calculation for plaintiffs' attorneys fees after reducing claimed compensable hours by 35% and applying hourly rates to reflect prevailing rates in Salt Lake City rather than New York City as urged by plaintiffs. The Tenth Circuit did not disturb these determinations, so the lodestar as calculated by the district court remains at $293,741.55.

## II.

## REDUCTION OF LODESTAR FOR LIMITED SUCCESS

The trial court reduced the lodestar by seventy-five percent to reflect limited success because of failure to prevail on most of the claims which were presented, and unsuccessful presentation of alternative theories to invalidate Utah's so-called abortion ban. *Jane L., et al. v. Bangerter (Jane L. IV)*, 828 F.Supp. 1544 (D. Utah 1993). The Tenth Circuit reversed most of this court's substantive determinations and rejected this court's ruling that attorneys fees should not be awarded for presentation of the five unsuccessful alternative theories because they were separate and distinct from the core issue of alleged unconstitutionality of the Utah statute under the due process clause. *Jane L., et al. v. Bangerter*, 61 F.3d 1505 (10th Cir.1995).

### A. Relative Importance of Claims

The Tenth Circuit has instructed this court to reassess the degree of plaintiffs' success in light of the appellate court's merits determi-

nations, and to make a qualitative assessment regarding the relative importance of one claim versus another. The Tenth Circuit panel regarded the prior reductions by this court as presenting a suspiciously "coincidental correlation between the ratio of successful and unsuccessful claims," and was concerned that this court "may have mechanically weighed each successful and unsuccessful claim equally." [1]

Based upon a review of the very large and extensive written and oral presentations made to this court in what was protracted and massive litigation, the claims asserted were evaluated and assessed in relative percentages by this court and are now reiterated as follows:

*Unconstitutionality of abortions under Utah Statute—50%*

1. Pre-viable (before 20 weeks) abortions on demand—under due process clause—17.5%

2. Post-viable (after 20 weeks) abortions—under due process clause—17.5%

3. Alternative constitutional theories to invalidate Utah statute—15%

—Equal protection

—Establishment clause

—Free exercise clause

—Freedom of speech

—Involuntary servitude

*Other claims—50%*

4. Spousal notification—8%

5. Fetal experimentation—9%

6. Choice of methods—8%

7. Serious medical emergency including incorporation of statute requiring mens rea to invalidate criminal intent—15%

8. Utah Constitutional claims—10%

---

**1.** Plaintiffs advanced eight claims, only two of which were granted by this court. The Circuit Court described these claims as follows:

Plaintiffs succeeded in invalidating the pre–20 week restrictions on abortions (Utah Code Ann. § 76–7–302(2)) and the spousal notification statute (Utah Code Ann. § 76–7–304(2)). They were unsuccessful below on the following claims: 1) the post–20 week abortion restrictions in Utah Code Ann. § 76–7–302(3); 2) the

choice of method provisions in Utah Code Ann. §§ 76–7–307 and 308; 3) the serious medical emergency provision in Utah Code Ann. § 76–7–315; 4) the criminalization provision in Utah Code Ann. § 76–7–314; 5) the alternative legal theories advanced to maintain the underlying right to an abortion; and 6) the state constitutional claims. *Jane L. v. Bangerter* (Jane L. IV), 61 F.3d at 1511 Fn. 2 (10th Cir.1995).

The primary attack on Utah's abortion laws was to invalidate statutory restrictions on pre-viable as well as post-viable abortions. A large part of the legal work and presentation focused on theories other than a woman's liberty interest under the due process of law clause as ruled upon in *Roe v. Wade*. Both sides recognized that an imminent ruling by the Supreme Court in *Casey* likely would be definitive as to pre-viable abortions on demand. Accordingly, much of the effort was focused on the statutory restrictions imposed upon post–20 week abortions. Also, a great deal of emphasis was placed on other possible grounds and theories for invalidating the Utah statute. These challenges by plaintiffs taken together represented about 50% of the total legal matters presented to the court, both in importance and volume. In allocating percentages to the component parts of these challenges—which includes time spent, emphasis placed, briefing and oral argument—this court regarded plaintiffs' success as to the pre–20 week abortion challenge as 17.5%, the unsuccessful challenge of restrictions upon post–20 week abortions as 17.5%, and the unsuccessful alternative theories which were extensively briefed and argued as 15%. On appeal, the success ratio of plaintiffs as to the aforesaid abortion restriction challenges rose from 17.5% to 50%.

The other issues presented challenges which also amounted to approximately 50% in the qualitative assessment analysis. The "serious medical emergency" issue not only involved a vagueness challenge, but also directly implicated a separate Utah statute which required mens rea in the assessment of possible criminal liability. These matters together were and are evaluated at 15%. Spousal notification, fetal experimentation and choice of methods involved about the same emphasis and relative significance, and each of these issues was assigned approximately 8% of relative importance. The challenges based upon state constitutional claims were assigned 10%. All of these matters netted plaintiffs only about 8% success, which reflected the lower court's favorable ruling on spousal notification and rejection of the other claims. On appeal, two additional issues were ruled as successful by the Tenth Circuit—choice of methods and fetal experimentation—which increased plaintiffs' percentage of success to 25% as to the aforesaid issues.

## B. Reassessment of Level of Success

■ Based on this court's previous analysis, the aggregate of the aforesaid qualitative assessments resulted in only a 25% success ratio in favor of plaintiffs. Based upon the Tenth Circuit's determinations, the success ratio is raised to 75%. The level of success of plaintiffs in this litigation is therefore adjusted accordingly, reducing the lodestar by only 25%, which results in a legal fee award to plaintiffs of $220,306.

## III.

## LEGAL FEES AWARDED TO DEFENDANTS

This court awarded fees to defendants in two particulars. *First*, for what this court perceived to be the presentation of frivolous claims, i.e., that the Utah abortion statute violated provisions of the United States Constitution concerning involuntary servitude, equal protection of the laws and the Establishment Clause. *Second*, for assertion of state constitutional claims which were brought in bad faith. This court awarded defendants the sum of $29,879.63 as to the claims found to be frivolous, and the sum of $15,847.47 to be paid by plaintiffs' counsel as to the claims which the court found to have been brought in bad faith. The Tenth Circuit reversed in toto the district court's award of attorney's fees to defendants, finding that this court had abused its discretion by awarding defendants any attorney's fees and expenses. The Tenth Circuit panel apparently did not reach or feel constrained to even discuss this court's finding that the state constitutional claims had been brought in bad faith.

## IV.

## COSTS AND EXPENSES

■ Plaintiffs lumped costs and expenses together in a submission requesting recovery of $51,775.56. After separation out of ex-

penses (which are more appropriately considered as part of attorney's fees), this court identified $13,009.19 in costs. Those cost items were denied since they "washed" with an approximately equal amount awarded to defendants as prevailing parties on most of the claims. This court now eliminates the award of costs to defendants and reduces the costs awarded to plaintiffs by 25%, consistent with the re-computed percentage reduction of attorney's fees. Accordingly, plaintiffs are awarded $9,756.29 in costs.

Expenses claimed by plaintiffs amounted to $38,766.37. This court denied claimed travel expenses in the amount of $22,709.57, and the Tenth Circuit said that it was "not persuaded that the district court abused its discretion" in that particular. Accordingly, this court awards plaintiffs the sum of $16,068.68 in expenses to be added to the award of attorney's fees. The award to defendants of expenses is vacated.

Based upon the foregoing, it is hereby

ORDERED, that plaintiffs whose claims were successfully prosecuted are awarded $236,374.68 for attorneys fees; it is

FURTHER ORDERED, that plaintiffs are awarded $9,756.89 for costs of court; it is

FURTHER ORDERED, that previous awards to defendants of attorney's fees, expenses and costs are vacated.

IT IS SO ORDERED.

J. THOMAS GREENE, District Judge, dissenting.

In writing this dissent, there is certainly no intention to rehash or to request reconsideration of the rulings by the Tenth Circuit concerning previous rulings by this court. This court has endeavored faithfully to follow the directives issued on remand. In reassessing attorney's fees, however, this court respectfully disagrees in at least two particulars with the required awards to be made in furtherance of the rulings of the Honorable Tenth Circuit.

*Attorneys Fees Awardable as a Result of Non–Severability of Utah Statutory Restrictions on Post–Viable Non–Therapeutic Abortions*

With the exception of determining the constitutionality of pre-viable abortions on demand, perhaps the most significant and important issue presented (in this court's opinion) was the constitutionality of restrictions imposed by the Utah statute upon post-viable (post–20 week) abortions. The higher court did not reach or rule upon this important issue on the merits. In *Planned Parenthood v. Casey,* 505 U.S. 833, 870, 112 S.Ct. 2791, 2817, 120 L.Ed.2d 674 (1992), the Supreme Court rejected the trimester framework of *Roe v. Wade,* and fixed the point of viability as the appropriate line of demarcation wherein the interest of the State in unborn children exceeds the liberty interest of a woman in the abortion choice. Whether the Utah statute imposes an undue burden on the choice to obtain a late (post–20 week) non-therapeutic abortion is the hard but crucial decision which should determine in largest part success or lack of success as to this issue. That determination was not made by the appellate court.

The Tenth Circuit disposed of the issue in a tenuous interpretation of the Utah legislature's separability clause, striking down the post 20 week section of the statute as not severable. The higher court made it clear that this court erred in giving effect to the explicit language of that severability clause. In this regard the appellate court was able to determine that the Utah legislature's "overarching substantive intention" was "to ban abortions throughout pregnancy." The Tenth Circuit ruled that Utah's restrictions on post–20 week abortions constituted "an integral, unseverable analog" to the ban on pre-viable abortions, and that invalidation of the latter required invalidation of the former. However, when confronted with Utah's statute concerning the "serious medical emergencies exception," the higher court rejected plaintiffs' contention that this provision is not severable from the invalidated sections of Utah's abortion statutes. The Tenth Circuit ruled that notwithstanding specific reference to the invalidated sections in the "serious medical emergency" section, that section "can stand without violating legislative intent" because other portions of the abortion laws remain valid and "continue to impose

requirements that in the face of a medical emergency, could be quite costly and cumbersome." For substantially the same reasons the appellate court ruled that the medical emergency provision was severable, should the post–20 week provision also have been severed?

Notwithstanding the appellate ruling that the section in question is not severable, and accepting that ruling as this court must as the law of this case, this judge would not have regarded such as representing a full "win" in the absence of the Tenth Circuit directive concerning assessment of fees.[2] This court would have reassessed the level of success as less than the full measure of heightened success as to that issue. Absent a ruling favorable to plaintiffs on the important substantive issue—which was the main focus of briefing and argument as well as the trial court's opinion on the subject—it is the opinion of this court that the level of success should be fixed at no more than one half—i.e., 8.75% rather than the full 17.5% which this court assigned to that issue in the qualitative assessment analysis.

For the reasons aforesaid, this judge respectfully dissents from the required award of a full measure of increased attorney's fees concerning plaintiffs' success in invalidating the post–20 week abortion provision.

*Attorney's Fees Awardable to Defendants*

Plaintiffs alleged and submitted to this court for determination several claims attacking the Utah abortion statute under the Utah Constitution. Utah acceded to the jurisdiction of this court in that neither the Governor nor the Attorney General of Utah as parties objected or claimed the right of dismissal on jurisdictional grounds. At a late stage in the proceeding plaintiffs sought to withdraw the claims by dismissal without prejudice, which was opposed by defendants. Plaintiffs then argued that the claims ought to be dismissed anyway because of lack of jurisdiction in this court since the state's consent to jurisdiction of the federal court was insufficient under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). It appeared to this court not only that the state's unqualified consent to having the matter presented for decision in federal court rather than state court removed any impediment to jurisdiction, but that the claim was presented by plaintiffs as a ploy in view of involvement of plaintiffs' counsel in a previous analogous case, *Hodgson v. Minnesota*, 1985 WL 6547 (D.Minn. Jan. 23, 1985), in which case the State of Minnesota successfully moved for dismissal of state constitutional claims based upon *Pennhurst*. It further appeared to this court that counsel for plaintiffs believed from the outset but failed to so advise the court that there was a good argument that this court lacked jurisdiction of the state claims. So, depending on how it appeared to counsel this court finally might rule, the claim of no jurisdiction could be raised as a "trump" and the state claims could be preserved as needs be for further challenge at a later date in state court. This court rejected counsel's jurisdictional arguments, finding that the state had waived Eleventh Amendment immunity, and proceeded to address the state claims on the merits. Further, this court found that the state claims were brought in bad faith, justifying an award of attorney's fees in favor of defendants under the inherent power of the court (*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)) and pursuant to 28 U.S.C. § 1927. See *Jane L. v. Bangerter* (Jane L. IV), 828 F.Supp. at 1554, 1556.

Since this court essentially ruled that the state constitutional claims which corresponded to federal claims were frivolous, the Tenth Circuit's view that this court was in error in that regard might explain why the higher court directed reversal of any award of attorney's fees to defendants. The higher court did not specifically address the award of attorney's fees based on presentation of claims in bad faith.

For the reasons aforesaid, this judge respectfully dissents from the blanket directive not to award any attorney's fees to defendants, which required reversal even of the

---

**2.** The Circuit Court regarded its non severability ruling concerning post 20–week abortions as a wholly successful result for plaintiffs and directed this court to "reassess the wins and losses" as to which "plaintiffs have now prevailed." *Jane L. v. Bangerter*, 61 F.3d at 1513.

award based upon presentation of claims in
bad faith.