**In re ROCKY MOUNTAIN HELICOPTERS, INC., et al., Debtors.**

**Bankruptcy Nos. 93C–25447 to 93C–25450.**

United States Bankruptcy Court, D. Utah.

Aug. 25, 1995.

271

Hollace T. Cohen, Norman N. Kinel, Karen Ostad, Whitman Breed Abbott & Morgan, New York City, and Danny C. Kelly and William G. Fowler, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for debtors.

Peter W. Billings, Jr., and Anna W. Drake, Fabian & Clendenin, Salt Lake City, UT, for the Official Committee of Unsecured Creditors.

Vernon L. Hopkinson, Cohne, Rappaport & Segal, Salt Lake City, UT, for Textron Lycoming.

Laurie A. Crandall, United States Trustee's Office, Salt Lake City, UT, for the U.S. trustee.

Jeffrey L. Shields and Andres Diaz, Callister, Nebeker & McCullough, Salt Lake City, UT, for Zion's Credit Corp.

## MEMORANDUM OPINION AND ORDER RE: FINAL APPLICATION OF WHITMAN BREED ABBOTT & MORGAN FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

GLEN E. CLARK, Chief Judge.

The final application of Whitman Breed Abbott & Morgan ("Whitman"), counsel to Rocky Mountain Helicopters, Inc., et al., for allowance of compensation and reimbursement of expenses came before the court April 10, 1995. Those appearing were: Hollace T. Cohen, Esq., Norman N. Kinel, Esq., Karen Ostad, Esq., Danny C. Kelly, Esq., and Wil-

liam G. Fowler, Esq., for the debtors; Peter W. Billings, Jr., Esq., and Anna W. Drake, Esq., for the Official Committee of Unsecured Creditors; Vernon L. Hopkinson, Esq., for Textron Lycoming; Laurie A. Crandall, Esq., for the United States Trustee; Jeffrey L. Shields, Esq., and Andres Diaz, Esq., for Zion's Credit Corporation.

### PRIOR INTERIM APPLICATIONS AND ALLOWANCES

On March 18, 1994, Whitman filed its first application for allowance of interim compensation and reimbursement of expenses, seeking compensation of $856,012.33 and $118,612.30 in costs. Whitman was awarded, as an interim fee, $752,915.00 for professional services and $105,294.87 for reimbursement of costs and expenses. On July 18, 1994, Whitman filed its second application seeking $1,030,548.50 for professional services and $127,010.61 for costs and expenses. Whitman was awarded interim fees of $504,498.00 [1] for professional services and $127,010.61 for reimbursement of costs and expenses. This award consisted of 50% of the requested, adjusted fees and 100% of requested expenses, without prejudice to allowance of the balance of such fees as part of the final fee application. On November 8, 1994, the court authorized payment of 50% of all future requested fees and 100% of all future requested costs and expenses and waived the requirement for filing interim applications. Whitman's third application seeks fees of $2,516,776.55 and expenses of $521,879.98. The final application requests aggregate fees of $4,754,162.65 and aggregate expenses of $762,016.89 for a total of $5,516,179.54 [2] which is the amount noticed to creditors pursuant to Whitman's final application. Whitman also seeks supplemental fees of $98,302.50 and supplemental expenses of $36,244.42 for a total request of $5,650,726.46.[3] To date, Whitman has received interim payment for fees and expenses totaling $3,289,935.36. Whitman now seeks the unpaid balance, $2,360,791.10.

Objections were filed by the Official Committee of Unsecured Creditors ("committee"), the United States Trustee, Zion's Credit Corporation, and Textron Lycoming to the "Final Application of Whitman Breed Abbott & Morgan, Counsel to the Debtors, for Allowance of Compensation and Reimbursement of Expenses."

From the commencement of this case through confirmation of the plan, a rocky course of 15 months, the court observed Whitman's performance. Whitman, particularly Norman N. Kinel as lead counsel, performed as an effective advocate for its client. Nevertheless, there are legitimate disputes concerning the degree of success achieved and to whom credit or blame should be attributed. Overall, however, the court finds that this was a successful reorganization. In a complex reorganization case, one can seldom determine that the excellent results referred to in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and discussed in *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir.1995) were achieved. Except for the reductions set forth below, the court finds that the fees and costs requested were reasonably and necessarily incurred and are allowed by the court.

 The objecting parties identified several particulars as the basis for their objections to the fees requested as well as those previously awarded. One basis was that Whitman was unreasonably litigious and seemed to prefer an adversarial posture to one of negotiation and settlement. The court recognizes the frustration of the objecting parties regarding Whitman's litigious approach. Indeed, the court expressed its concern, on the record, early in the case. However, without evidence to show that Whitman was aware or should have been aware from

---

**1.** At the hearing of August 3, 1994, Whitman's fees were reduced by $21,552.50 for unproductive travel time.

**2.** A careful reader will note that the sum of the individual requests for fees and expenses does not equal the final request amount of $5,516,179.54.

**3.** For purposes of this opinion, Whitman's final application for fees and expenses includes the supplemental request for fees and expenses filed April 10, 1995.

the outset that particular litigation would provide no benefit to the debtor, this court will not deny or reduce professional fees for professionals involved in the litigation. *In re Lederman Enterprises, Inc.*, 997 F.2d 1321 (10th Cir.1993). It is important to note that this court believes it is imperative that debtors' professionals be free to prosecute or defend their client's position based upon their best professional judgment. The court also knows that negotiations are often most effective when the threat of litigation is real. A party who is in any way impeded in its ability to proceed with litigation is seriously disadvantaged. *This court will not put the debtors' professionals into such a position.*

Next, the objecting parties argue that Whitman's fee request is excessive. Among other things, they cite a failure to exercise reasonable billing judgment in the determination of the necessity of certain actions taken and the number of billable hours which accompanied such actions. The committee's objection identifies approximately 650 instances in the second and third applications where individual Whitman attorneys billed more than 10 hours to the estate in one day and approximately 220 instances where more than 15 hours were billed to the estate in one day. The court recognizes that in certain instances it may be reasonable and necessary for an attorney to devote more than 10 billable hours in a day in performing his or her duties. One example would be when there are lengthy hearings before the court. However, the number of hours claimed and the fees requested by Whitman go beyond what this court believes is reasonable and necessary. Some of the many individual billings that the court finds to be representative of the excess include: nineteen consecutive days billed by Howard F. Mulligan beginning September 1, 1994, during which he billed the estate between 10.1 and 21.5 hours per day; fifteen consecutive days billed by Carmen E. Levy beginning January 8, 1995, during which the estate was billed an average of 17.3 hours per day; a four-day period from October 10, 1994, to October 13, 1994, billed by Hollace T. Cohen which averaged 19.1 billable hours per day[4]; the 23.90 hour day billed to the estate by Howard F. Mulligan on December 19, 1994, and the full 24.00 hour day billed to the estate by Clare Wee on November 1, 1994. The attorneys who appeared before the court were always competent and from time to time, as they have argued, "pithy." The court has noted, however, and with some sense of personal relief, that they were human and sometimes appeared tired and less than fully efficient.

Whitman's billable rates are substantially higher than the rates found in the Salt Lake City area. Examples of hourly rates include $350.00 for Hollace T. Cohen, $250.00 for Norman N. Kinel, $300.00 for Benjamin Polk, $175.00 for Karen Ostad (admitted to practice 1988), and $130.00 for Clare Wee (admitted to practice 1991). This court acknowledges that it is appropriate for out of state counsel to bill the estate at their customary billable rates, *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557 (Bankr.D.Utah 1985). This reorganization can fairly be considered as one of national scope which required the performance of legal services within several states. Many of the attorneys who appeared for creditors were also from out of state. While custom, overhead, and cost of living may influence rates, market forces allow certain professionals to bill at higher hourly rates than others. This difference is based upon the professional's particular expertise and ability. In other words, attorneys who bill at higher rates do so because they work smarter, better, and faster. Whitman's hourly rates justify the reasonable expectation that Whitman attorneys will accomplish their tasks smarter, better, and faster than attorneys who charge a lower hourly rate. The sheer number of hours appearing in this application convinces this court that Whitman was not consistently accomplishing its tasks smarter, better, or faster. The fee request is not reasonable. Accordingly, this court will impose its own billing judgment with an across the board reduc-

---

4. At Cohen's billable rate of $350.00 per hour, her bill to the estate averaged $6,711.00 per day for a four-day total of $26,845.00.

tion of 12% on fees incurred after the first application period.

## THE GMAC APPEAL

■ The failure of Whitman to defend the GMAC appeal, after incurring more than $150,000.00 in professional fees litigating the matter, is of great concern. On July 28, 1994, as a sanction for violating the order concerning communications with the court appointed expert, Barry D. Desfor, the court partially denied GMAC's motion for relief from stay. The order was entered August 31, 1994, and was appealed on October 18, 1994. GMAC filed its initial brief in the appeal and on November 23, 1994, Whitman filed "Appellee's Motion for Extension of Time to File Appellate Brief and for Dismissal of Appeal of Issues Not Properly Before the District Court" and did not file a responsive brief. The motion for extension was not granted. Instead, the district court reversed and remanded this court's order in an opinion dated December 19, 1994. A settlement with GMAC was finalized on December 19, 1994, and the terms of the settlement were placed on the record the same day. It is reasonable for this court to assume that GMAC was aware that Whitman's motion to extend time had not been granted and the time to file a responsive brief had run. It follows that GMAC's knowledge of these facts significantly affected, to the detriment of the debtor, settlement negotiations. Whitman gave as its only reason for its failure to properly prosecute the appeal its belief that the issuance of the opinion by the district court, without granting the motion for extension of time, was "draconian." Whitman's neglect of this appeal exhibits a dereliction of duty toward this estate which deserves sanctions. Accordingly, the fees requested in the application will be further reduced by $100,000.00.

## EXPENSES

■ In the final application, Whitman seeks $65,127.84 for carfare and delivery expenses. Most of these expenses were incurred by Whitman employees using limousine services. Guidelines for the use of local taxi and limousine charges have been estab-lished in the Southern District of New York. *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13 (Bankr.S.D.N.Y.1991) at 33. "Local taxi and limousine charges should be minimized and justified." In this instance, it appears such charges have been neither minimized nor justified. Whitman argues that the limousine service is necessary as the safest and least costly mode of transportation available to return late-working employees to their homes. However, Whitman provides no information about comparable costs such as the use of a taxi or even an in-house driver. It appears from the application that Whitman made no effort to minimize limousine charges. In ten instances, the limousine service expense exceeded $150.00 per trip. On six occasions, the same employee of Whitman utilized limousine service twice in one day. Since no satisfactory explanation is provided by Whitman as to why the utilization of limousine and carfare services was reasonable or necessary, the court will reduce by 50% the $65,127.84 for carfare and delivery expenses.

## AIRFARE, HOTEL, AND OUT OF TOWN MEALS

■ In the final application, Whitman seeks reimbursement of expenses totaling $267,171.40 for airfare, hotel, and out of town meals. Despite the fact that most hearings in this matter were scheduled weeks in advance, it appears, with very few exceptions, the airfare expense incurred for travel between New York and Utah was at the maximum rate charged for the purchase of same day or next day tickets. There is no indication that care was taken to minimize airfare expenses and no explanation regarding confusing or duplicative airfare expenses. One example of Whitman's duplicative and confusing entries is the request for reimbursement for airfare expense incurred by Eileen A. McDonnell on December 6, 1994. The request itemizes three flights on United Airlines between New York and Salt Lake City. All three flights, two round trip flights at $1,304.00 each, and one flight from Salt Lake City to New York at $652.00, are shown to have occurred on December 6, 1994. This court can only assume that all three flights

were reserved and the duplicative reservations never canceled.

Many extraneous expenses including shoe shines, in-room movies, gift shop purchases, and expenses incurred at hotel lounges were included in Whitman's application. It appears no billing judgment was used by Whitman in determining which of the charges should be billed to the estate and which should be absorbed by the individual.

The lavish expenses requested for meals are not justified or explained. Not even minimal information is provided, e.g., "STAFF EXPENSES check No. 49290—MEALS—10/19/94—S.L. CITY—NNK $220.64."

Accordingly, reimbursement for airfare, hotel, and out of town meals shall be limited to $220,000.00.

### FACSIMILE EXPENSES

 In the final application, Whitman seeks $74,174.00 as reimbursement for facsimile charges. No explanation or justification is provided by the applicant to show why the use of facsimile transmission was necessary in each of the instances. In light of the fact that the total postage expense is $2,210.85, it appears that little effort was made by Whitman to minimize the expense to the estate through the use of mail as opposed to the more costly method of facsimile transmissions. While the court is aware that numerous hearings were held on short notice, the extent of the use of facsimile transmission, without accompanying explanation or justification, is unreasonable. For that reason, the court will allow reimbursement for facsimile expenses in the amount of $50,000.00.

### OVERTIME PERSONNEL EXPENSE

 In the final application, Whitman seeks reimbursement totaling $116,851.54 for "staff overtime." The only justification regarding the staff overtime is the statement that overtime expenses were incurred where necessary to provide the most timely service to the client and to deal with the exigent circumstances which existed during the course of the case. No information is provid-

ed regarding the actual cost to the firm per hour for overtime staff, whether the work was strictly related to Rocky Mountain Helicopters, and whether the clerical staff was involved in other work during the day which thereby necessitated overtime hours. The court is unable to find the extent of staff overtime expenses for which Whitman seeks compensation as being reasonable or necessary and for that reason reduces reimbursement of expenses for staff overtime to $75,000.00.

### CONCLUSION

This was a complex case which involved difficult legal questions and required high skills of advocacy and legal knowledge. In ruling, the court is mindful of the need to compensate counsel comparably with fees they could expect for legal services in other areas of the law requiring similar skill and effort. The court is also aware that the burden of proof rests upon the applicant. The court has accepted its duty to review the fees and costs to determine that the award meets the applicable legal standards.

Whitman seeks a total award of fees and costs of $5,650,726.46. Of that, Whitman has already made a voluntary 10% reduction to its request for fees incurred during the first application period. The court will impose the 12% reduction on fees incurred after the first application period. The 12% reduction will therefore apply to the fee request for the second, third, and supplemental periods ($1,008,996.00 + $2,994,896.55 + $98,302.50) less $100,000.00 for the GMAC reduction for a total of $4,002,195.05 to which the 12% reduction applies for a reduction of $480,263.40. This leaves fees to be awarded of $3,521,931.65 plus the fees allowed under the first application period of $752,915.00 for a total final fee award of $4,274,846.65.

Whitman seeks final reimbursement of expenses for the first application period of $130,311.73, the second application period of $127,010.61, the third application period of $521,879.98, and the supplemental period of $36,244.42 for a total request of $815,446.75. With the reductions set forth in this memorandum opinion and order, Whitman's award

for final reimbursement of fees and expenses is $669,685.89.

Pursuant to this memorandum opinion and order, Whitman's final allowance of fees and expenses is $4,944,532.54. Because $3,289,-935.36 has already been paid, the balance remaining to be paid is $1,654,597.18.