**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JILL M. CRUMPACKER,

        Plaintiff-Appellee,

v.

STATE OF KANSAS,
DEPARTMENT OF HUMAN
RESOURCES,

        Defendant-Appellant.

Nos. 04-3266 and 05-3115

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 00-CV-4044-RDR)**

---

Deanne Watts Hay (Matt P. Patterson with her on the briefs), Parker & Hay, LLP, Topeka, Kansas for Defendant-Appellant.

Timothy W. Monsees, Monsees Miller Mayer Presley & Amick, PC, Kansas City, Missouri (Gene P. Graham, Jr. and Deborah J. Blakely, White Allinder Graham & Buckley, LLC, Independence, Missouri with him on the brief) for Plaintiff-Appellee.

---

Before **LUCERO**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Title VII does not protect an appointee on the policy making level in state or local government. In this case, Jill Crumpacker, a senior member of the Kansas Department of Human Resources (KDHR), was fired by the Secretary of the Department. Crumpacker sued KDHR under Title VII, alleging that she was fired because of her sex. The district court rejected KDHR's legal argument that Crumpacker was an appointee on the policy making level since she had not been appointed by an elected official, as required by our case law. A jury later ruled in her favor on the discrimination claim. KDHR appeals the district court's denial of its post-trial motions for judgment as a matter of law or for a new trial, as well as the district court's award of fees.

We exercise jurisdiction pursuant to 42 U.S.C. § 1291. Finding that Crumpacker was not appointed by an elected official, we affirm.

### I. Factual Background

Bill Graves was elected Governor of Kansas in 1994. For the first two legislative sessions of his administration, the Governor employed Jill Crumpacker as a legislative liaison, working directly for him in the Governor's office. In this position, Crumpacker was appointed by, and was employed at the pleasure of the Governor.

In August 1996, following these two legislative sessions, KDHR Secretary Wayne Franklin asked Crumpacker to submit her resume for the position of Director of Employment and Training within KDHR. As with other cabinet level

-2-

officers in Kansas, Secretary Franklin held his position by virtue of a gubernatorial appointment.

After an interview, Secretary Franklin selected Crumpacker for the KDHR director's position. Her appointment was subject to Kan. Stat. Ann. § 75-5702 which required the Governor's "consent" for all KDHR division directors whose appointments are not otherwise provided for by a separate statute. More specifically, the statute provided that the KDHR Secretary "may appoint, with the consent of the Governor . . . one or more division directors . . . all of whom shall serve at the pleasure of the secretary of human resources. . . ." Kan. Stat. Ann. § 75-5702 (1976). Crumpacker testified that she never met or interviewed with the Governor regarding the position.

Pursuant to the statute, Franklin sent the Governor a letter requesting approval of Crumpacker's appointment as a KDHR division director, and approval of Crumpacker's salary pursuant to Kan. Stat. Ann. § 2935(b). The Governor's appointments secretary, Jodi Krueger, responded with a letter approving Crumpacker's salary and appointment. Crumpacker's position was unclassified, meaning her employment as a KDHR division director was not subject to Kansas's civil service laws.

In her position at KDHR, Crumpacker had a variety of responsibilities. She led one of the largest divisions in Kansas state government, overseeing at least 280 employees. Crumpacker also served on the Kansas Workforce Investment

Partnership (KWIP), an advisory council to the Governor mandated by federal law. She was appointed to her KWIP position by the Governor, receiving a certificate of appointment. Crumpacker's KDHR division was responsible for staffing KWIP, and her appointment there was by virtue of her KDHR position. In weekly updates to Franklin, Crumpacker claimed responsibility for helping to develop KDHR policy, especially with reference to budget planning and federal grant applications.

Differences arose between Franklin and Crumpacker, and eventually Franklin decided he wanted to fire her. According to Franklin, he met with the Governor to discuss the situation. Franklin explained he believed that he could not fire Crumpacker without the Governor's permission. The Governor advised Franklin to "do what [he] felt [he] needed to do." Aplt. App. for 04-3266, Vol. I at 78. Franklin fired Crumpacker in September 1998.

## II. Procedural History

Crumpacker filed suit in the District of Kansas under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17, alleging that Franklin discriminated against her on the basis of her gender. KDHR moved for summary judgment on the basis of 42 U.S.C. § 2000e(f) which provides that certain political appointees and policymaking officials are not considered employees protected by Title VII.

The district court denied the motion, concluding that Crumpacker was not a political appointee as a matter of law. KDHR filed an interlocutory appeal

challenging the court's ruling on the motion and on several other issues relating to sovereign immunity, which we affirmed in *Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163 (10th Cir. 2003) (*Crumpacker I*). We did not, however, reach the question in that appeal concerning the policymaker exception to Title VII.

After remand, the case proceeded to trial and the jury returned a verdict for Crumpacker. KDHR then moved for judgment as a matter of law or for a new trial under Federal Rules of Civil Procedure 50(b) and 59, respectively. The district court denied the motion, holding that to be exempt from Title VII's protections, a person must have been appointed by an *elected* official. The court found Crumpacker was not eligible for the exemption because she was not so appointed.

### III. Title VII Claim

We review the district court's denial of judgment as a matter of law *de novo*, using the same standard employed by the district court. *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997). We construe the facts of the case in the light most favorable to the jury's verdict. In doing so we bear in mind that "[u]nless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion, judgment as a matter of law is improper." *Greene v. Safeway Stores, Inc.*, 98

F.3d 554, 557 (10th Cir. 1996) (internal citations omitted).

## A.

Title VII outlines four classes of persons who are exempt from its protection: (1) elected officials; (2) persons chosen by an elected official to be on such official's personal staff; (3) "appointee[s] on the policy making level"; and (4) persons serving as an immediate adviser to the elected official with respect to the constitutional exercise of the powers of the official's office. 42 U.S.C. § 2000e(f).[1]

Crumpacker was not an elected official, nor was her position at KDHR on the personal staff of the Governor. KDHR does not allege that Crumpacker was an immediate adviser to the Governor or any other elected official with respect to the exercise of their powers of office. Thus, we are concerned exclusively with

---

[1] The full text of 42 U.S.C. § 2000e(f) provides:

> The term "employee" means an individual employed by an employer, except that the term "employee" *shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.* The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

*Id.* (emphasis added).

the third exemption: for an "appointee on the policy making level." 42 U.S.C. § 2000(e)(f).

**1.**

This is not the first time we have addressed the requirements for Title VII's policy maker exemption. In *Anderson v. Albuquerque*, 690 F.2d 796 (10th Cir. 1982), we held that a Title VII plaintiff falls within this exemption only if "appointed *by an elected official* to a policy making position." *Id.* at 800 (emphasis added). In that case we concluded, moreover, that an elected official's participation in the selection process alone would not demonstrate compliance with the appointment requirement, especially where the employee did not work with the elected official in the "intimate and sensitive association contemplated by [Congress]." *Id.* In reaching this result, we pointed to Congress's explanation of the scope of the exemption:

> it is the intention of the conferees to exempt elected officials . . . and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level.

Joint Explanatory Statement, 1972 U.S.C.C.A.N. 2137, 2179–80.[2]

---

[2] Other courts which have considered this exception agree that the appointment must be made by an elected official. *See, e.g., Tranello v. Frey*, 962 F.2d 244, 248–51 (2d Cir. 1992); *Rutland v. Moore*, 54 F.3d 226, 230 (5th Cir. 1995); *Butler v. N.Y. State Dept. of Law*, 211 F.3d 739, 747–48 (2d Cir. 2000); *E.E.O.C. v. Massachusetts*, 858 F.2d 52, 55–56 (1st Cir. 1988). In *Gregory v. Ashcroft*, the late Justice White also specifically endorsed this view in a

(continued...)

Accordingly, to be exempt from Title VII's protections, Crumpacker must (1) have been appointed by an elected official, and (2) acted as a policy maker. In light of this precedent, KDHR has not argued that an appointment implicating Title VII's policy maker exception could be made by someone other than an elected official.

**2.**

KDHR makes two arguments based on Kansas law that Crumpacker is a political appointee of the Governor. First it argues that Crumpacker was an unclassified employee, not subject to traditional civil service protections under state law and should therefore be considered to be exempt from Title VII's protections. Second, it argues that the Governor's consent to her appointment by the Secretary satisfies the policy maker exception.

Crumpacker's status as an unclassified employee under state law is a necessary predicate, but not determinative of her exemption from Title VII protection under federal law. Title VII explicitly provides that persons subject to a state's civil service laws may not be excluded from Title VII protections, 42 U.S.C. § 2000e(f) ("The exemption . . . shall not include employees subject to the civil

---

[2](...continued)
concurrence joined by Justice Stevens. 501 U.S. 452, 481–82 (1991) (White, J. concurring).

service laws. . . .").[3]  But the converse is not also true—every unclassified employee is not necessarily exempt from the Act.

KDHR's second argument—the Governor's consent required by Kansas statute constitutes an appointment—is also ultimately unpersuasive.  Section 75-5702 of the Kansas code requires that a division director be appointed by the Secretary of KDHR "with the consent of the governor."[4]  Kansas argues the statutory requirement that the Governor "consent" to Crumpacker's appointment means functionally that every employee subject to the provision is appointed by the

---

[3] It is also the case that an individual's exemption from state civil service laws is cited by the EEOC as an indication that the individual is not protected by Title VII.  *See* EEOC Compliance Manual § 2-III A-5.

[4] Kan. Stat. Ann. § 75-5702 provides:
*The secretary of labor may appoint, with the consent of the governor*, one public information officer, *one or more division directors*, one personal secretary and one special assistant, *all of whom shall serve at the pleasure of the secretary of labor*, shall be in the *unclassified service* under the Kansas civil service act and shall receive an annual salary fixed by the secretary of labor with the approval of the governor. The secretary of labor also may appoint such other officers and employees as are necessary to enable the secretary to carry out the duties of the office of the secretary and the department of labor. Except as otherwise specifically provided by law, such officers and employees shall be within the classified service under the Kansas civil service act. All personnel of the department of labor shall perform the duties and functions assigned to them by the secretary or prescribed for them by law and shall act for and exercise the powers of the secretary of labor to the extent authority to do so is delegated by the secretary.
*Id.* (emphasis added).

-9-

Governor.[5]  We agree that this statutory language is relevant to our inquiry.  We

conclude, however, that an analysis of the statute does not yield the conclusion that

Crumpacker was appointed by the Governor.

To determine whether a person is appointed by an elected official under Title

VII is a two-step process.  The first step is to decide the meaning of applicable

Kansas law.  If the state law is clear, our analysis ends.  If the law is indeterminate,

we must look to the underlying facts surrounding the appointment to help answer the

question.

When attempting to answer a question of state substantive law, we look to the

statutory text or interpretations of the text by the state's highest court.  *Peoples v.*

*CCA Det. Ctrs.*, 422 F.3d 1090, 1104 n.7 (10th Cir. 2005).  Here, we are presented

with a statute on which no Kansas court has spoken.  Therefore, we are left to

interpret § 75-5702 as a matter of first impression.

The Department asks us to read § 75-5702 as vesting ultimate appointment

power in the Governor for purposes of Title VII, interpreting the statute's "consent"

requirement as the *sine qua non* of the appointment power.  We disagree.  The plain

_____

[5] It bears mentioning that the Kansas Constitution provides for a unitary executive.  Kansas Const. Article I, Clause 3.  This makes the Kansas system analogous to the federal system.  In the context of the federal government, it is well established that Article II vests appointment authority in the President.  No circuit court has had occasion to consider an argument that where a state constitution mandates a unitary executive, all state appointment authority not constitutionally assigned to another elected constitutional officer must be presumed to lie with that executive.  KDHR has not made such an argument in this case, and we therefore do not consider it.

language of the statute vests the appointment power with the Secretary of KDHR, who is not an elected official. Simply put, even if we agree the "consent" provision requires some level of participation by the Governor in Crumpacker's appointment, it does not subsume the Secretary's ultimate appointment responsibility in the hiring process.[6] While it is clear the Governor's office has some role in personnel selection at the sub-cabinet level, § 75-5702 nonetheless assigns to the Secretary, not the Governor, the responsibility to "appoint" division directors.[7]

Nevertheless, the nature of an appointment for purposes of Title VII is a question of federal law, and we cannot deny that § 75-5702 allows for some degree of involvement by an elected official in the appointment process. This uncertainty requires we turn to an analysis of how the statute was actually implemented in this case. We do so noting that where a state statute unambiguously and unqualifiedly

---

[6] KDHR also argues that the term "consent" denotes a degree of action inconsistent with passive approval. Even so, as we discuss below, the appointment here was ultimately made by the Secretary, and the record does not suggest active involvement by the Governor in Crumpacker's selection.

[7] KDHR further contends that the "consent" required from the Governor is equivalent to the advice and consent of the Senate to Presidential appointments. This analogy is unhelpful to KDHR: it is indisputable that federal appointment power is vested in the President. The Senate's advice and consent power, exercised in the confirmation process, does not turn Presidential appointees into Senatorial appointees.

vests the appointment power in a specific elected or non-elected official, we will not construe the statute to say otherwise.[8]

Despite the noted ambiguity, the statute itself weighs in favor of a conclusion that Crumpacker was not appointed by the Governor. The record also breaks in Crumpacker's favor. It shows that Secretary Franklin, not the Governor, interviewed and appointed Crumpacker for the director's position. Secretary Franklin was, by all accounts at trial, the person who took note of Crumpacker's performance in the Governor's office and who asked her to apply for the KDHR position. Franklin made the decision to hire Crumpacker, and in the end, made the decision to fire her. Nothing suggests the Governor compelled Franklin to hire Crumpacker, or otherwise actively orchestrated her interview and appointment to the position. Nor did the Governor control her day-to-day job responsibilities, monitor her performance, or insist on her eventual firing.

KDHR, however, maintains that the evidence presented at trial compels a different conclusion, citing four pieces of evidence: (1) Secretary Franklin's letter to the Governor requesting permission to appoint Crumpacker; (2) the Governor's approval of the pool of candidates for Crumpacker's position; (3) the Governor's later appointment of Crumpacker to the KWIP task force as a result of her KDHR

_____

[8] Nothing prevents Kansas from expressly exempting sub-cabinet officials like Crumpacker from Title VII under state law. It would be a simple matter to modify the scheme to require a direct gubernatorial appointment of such officials, and, so long as the Governor follows the statute and these employees are engaged in a policy making role, the Title VII exemption will apply.

directorship; and (4) Franklin's request that the Governor agree to Crumpacker's firing.

We disagree that these facts mandate the conclusion that Crumpacker was a gubernatorial appointee. To the contrary, the record is clear that Franklin asked Crumpacker to apply for the position, personally selected Crumpacker from the pool of candidates, interviewed her for the position, and sought the Governor's "consent" as required under § 75-5702. Franklin then appointed her, as was his statutory prerogative. Crumpacker's KWIP duties, while certainly pursuant to a gubernatorial appointment, were nonetheless derivative of her responsibilities at KDHR. Crumpacker served on KWIP because of her KDHR job, not vice-versa.[9] Moreover, though Franklin testified he asked the Governor's advice regarding his dissatisfaction with Crumpacker, the Governor took no part in Crumpacker's termination. Finally, § 75-5702 plainly states that Crumpacker served "at the pleasure of the secretary," and it is the Secretary who made the decision to fire her. Based on this evidence, we cannot find that the district court erred in concluding that Franklin, not the Governor, appointed Crumpacker. While we can imagine a case where the noted statutory ambiguity would allow a record of active

[9] KDHR maintians it is undisputed that the Governor appointed Crumpacker to the KWIP task force. Assuming that this is a qualifying appointment by an elected official under Title VII, we nonetheless note that Crumpacker's hybrid duties arising from KWIP and KDHR do not preclude a Title VII lawsuit arising out of Crumpacker's duties exclusively attributable to KDHR. It is clear from this record that Crumpacker's KDHR position was her primary position and her KWIP responsibilities were an ancillary to her KDHR work.

-13-

involvement by the Governor to render an appointment gubernatorial, this is not that case.

Accordingly, we agree with the district court that neither Kansas law nor the facts presented at trial compel a finding that Crumpacker was appointed by an elected official as required under 42 U.S.C. § 2000e(f). Crumpacker is, therefore, not subject to the policy maker exemption to Title VII, and her discrimination claims were properly considered by the jury. As a result of this conclusion, we need not address the second requirement of the exemption—whether her duties were actually those of a policy maker.

**B.**

KDHR's subsidiary argument is that the jury verdict intrudes on core state governmental functions and is, therefore, inconsistent with the Eleventh Amendment, citing to *Gregory v. Ashcroft*, 501 U.S. 452, 467 (1991) (holding that federal law does not preempt Missouri's mandatory judicial retirement age). We rejected this argument in *Crumpacker I* and reject it here for the same reasons. *See* 338 F.3d 1163 (10th Cir. 2003).

**IV. Fees**

KDHR also appeals the district court's award of attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k). Typically, we review a district court's award of attorneys' fees for abuse of discretion. *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992). We review de novo, however, any

determination of jurisdiction necessary for the entry of a fee award as well as any statutory interpretation which provides the basis for such an award. *Hoyt v. Robson Cos., Inc.*, 11 F.3d 983, 984 (10th Cir. 1993).

KDHR raises two arguments. First, it maintains the district court lacked jurisdiction to award fees and expenses in connection with the interlocutory appeal in this case. *See Crumpacker I*, 338 F.3d 1163 (10th Cir. 2003). Second, KDHR contends that the district court erred in awarding fees for six billing entries where the fee explanation was blacked out so as to render it illegible. We address each argument in turn.

**A.**

It is the law of this circuit that "[a]bsent an explicit [statutory] provision, in order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court." *Hoyt*, 11 F.3d at 985. *Hoyt* was decided in response to a prevailing plaintiff's application for appeal-related fees in district court after successfully defending an appeal on the merits before this court. *Id*. at 984. The district court in *Hoyt* denied the plaintiff's request for appeal-related fees (pursuant to a contract which provided for fee-shifting) for lack of jurisdiction, holding that the plaintiff was required to ask this court for those fees. We affirmed. *Id*.

Arguably, an interlocutory appeal is distinguishable from the final appeal on the merits addressed in *Hoyt*. Crumpacker could not have asked this court for

appeal-related fees at the time of the interlocutory appeal because she was not yet a "prevailing party" as required under Title VII, and thus was not yet entitled to any fee award. *See* 42 U.S.C. § 2000e-5(k) (allowing fees only for a Title VII plaintiff who prevails on the merits). The district court embraced similar logic in granting Crumpacker fees for the interlocutory appeal. Holding that it has jurisdiction to award fees, the district court cited to the only district court case we are aware of that has addressed this issue, *Central States Area Pension Fund v. Central Cartage Company,* 992 F. Supp. 980, 983 (N.D. Ill. 1998). In *Central States*, the district court determined it had jurisdiction to award fees for an interlocutory appeal, specifically distinguishing our decision in *Hoyt* on the basis of the difference between an interlocutory appeal, in which the district court maintains jurisdiction over matters not directly related to the appeal, and a final appeal on the merits which strips the district court of all jurisdiction. 992 F. Supp. at 983 n.5.[10]

In the end, while we are sympathetic to such logic, the rule of *Hoyt* binds us. We, therefore, hold that appeal-related fees, including those incurred in an interlocutory appeal, must generally be awarded by us. In drawing this conclusion, however, we likewise hold that parties who prevail on interlocutory review in this

---

[10] At least one other circuit court has encountered a similar situation. In *Flanagan v. Inland Empire Electrical Workers Pension Plan & Trust*, an ERISA plaintiff successfully appealed a district court's award of summary judgment. The Ninth Circuit held it could not yet award attorney's fees for the appeal, but conditionally allowed the district court to award fees if and when the plaintiffs established an ERISA violation. 3 F.3d 1246, 1253–64 (9th Cir. 1993).

court, and who subsequently become prevailing parties under Title VII or another fee-shifting provision at the conclusion of merits proceedings, are implicitly entitled to reasonable attorneys' fees related to the interlocutory appeal. The precise amount of these fees may be determined in the first instance by the district court considering trial-related fees in accordance with our longstanding practice. *Whittington v. Nordam Group, Inc.*, 429 F.3d 986, 1001–02 (10th Cir. 2005) (citing *Hoyt*, 11 F.3d at 985). Any dispute as to the propriety or amount of fees related to an interlocutory appeal determined by the district court can be resolved on appeal to this court. Furthermore, because appeal-related fees are issued at the discretion of this court, our review of such fees determined by the district court will be de novo.

Accordingly, we affirm the district court's award of fees for the interlocutory appeal. Crumpacker is entitled as the prevailing party in this Title VII litigation for fees for both her interlocutory and direct appeals.

**B.**

KDHR also argues that the district court erred when it awarded Crumpacker fees for six billing entries for which the fee explanation from her attorneys was blacked out so as to make it unreadable.[11] We find no abuse of discretion here. It is true that we require billing records submitted in connection with a fee request to ". . . reveal, for each lawyer for whom fees are sought, all hours for which

---

[11] We note that these six entries are not alleged to be related to the interlocutory appeal.

compensation is requested and how those hours were allotted to specific tasks. . . ."
*Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). Yet the Supreme Court has held only that where the "documentation of hours is inadequate, the district court *may* reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added). Here, the district court specifically found that "the 'blacked out' entries cause [no] problems in determining the validity or propriety of the work performed." Fee Order at 4–5. The law does not require the district court to reduce its fee award where it finds no difficulty in evaluating the propriety of an attorney's billing. We cannot say the district court abused its discretion in this regard and therefore affirm the district court's award of fees for the six blacked out entries.

## V. Conclusion

For the foregoing reasons, we AFFIRM the district court.