FILED
United States Court of Appeals
Tenth Circuit

August 5, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

YVONNE FLITTON,

      Plaintiff-Counter-
Defendant - Appellee/
Cross - Appellant,

    v.

PRIMARY RESIDENTIAL
MORTGAGE, INC.,

      Defendant-Counter-
Claimant - Appellant/
Cross - Appellee.

No. 09-4108 & 09-4120

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D. Ct. No. 2:03-CV-00481-DAK)**

---

Darryl J. Lee (Richard J. Armstrong, with him on the briefs), Wood Crapo, LLC, Salt Lake City, Utah, appearing for Appellant.

Blake S. Atkin (Joseph H. Pugsley, with him on the briefs), Atkin Law Offices, P.C., Bountiful, Utah, appearing for Appellee.

---

Before **TACHA**, **MCKAY**, and **GORSUCH**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Defendant-appellant Primary Residential Mortgage, Inc. ("PRMI") appeals

from the district court's order awarding plaintiff-appellee Yvonne Flitton $367,689.00 in attorney's fees as a prevailing party in a Title VII lawsuit. Ms. Flitton cross-appeals from the same order, challenging the district court's conclusion that it lacked jurisdiction to award her appellate attorney's fees because she failed to first request such fees in this court. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In 2003, Ms. Flitton filed suit against PRMI alleging, inter alia, discriminatory and retaliatory discharge in violation of Title VII, and seeking both compensatory and punitive damages for these alleged violations. At the close of Ms. Flitton's case, the district court partially granted PRMI's motion for judgment as a matter of law ("JMOL") and dismissed Ms. Flitton's discrimination and punitive damages claims. The court, however, allowed Ms. Flitton's retaliation claim to go to the jury, which returned a verdict in her favor and awarded her $50,000 in emotional distress damages. The district court then granted PRMI's renewed motion for JMOL, vacated the jury's verdict, and entered judgment in PRMI's favor on the retaliation claim.

On appeal, this court reversed the district court's decisions, remanded the case for a new trial on Ms. Flitton's discrimination and punitive damages claims, and reinstated the jury's verdict on Ms. Flitton's retaliation claim. Ms. Flitton did not ask, and has never asked, this court to award her appellate attorney's fees.

On remand, the second trial was divided into a jury trial portion for Ms. Flitton's discrimination and punitive damages claims and a bench trial portion to determine whether she was entitled to, and the amount of, front pay and back pay damages on her retaliation claim. The jury found in favor of PRMI on Ms. Flitton's discrimination and punitive damages claims, and the district court awarded her $354,703.05 in back pay based on the first jury's verdict in her favor.

Ms. Flitton then sought attorney's fees for her counsel's work in the first trial, the appeal to this court, and the second trial. After conducting a thorough review of the parties' submissions and arguments relating to Ms. Flitton's fees, the district court ultimately awarded her $367,689.00 in fees. In explaining the fee amount, the district court rejected PRMI's contention that Ms. Flitton was not entitled to any fees related to the second trial, or, in the alternative, that the fee amount should be reduced to reflect Ms. Flitton's "limited" success on her claims. The court also rejected Ms. Flitton's argument that she was entitled to appellate fees, instead concluding that it lacked jurisdiction to order such an award because Ms. Flitton had never requested fees from this court. Finally, in calculating the precise amount of the fee, the court refused to include fees that it found were unreasonably high or excessive, or were for clerical work, background research, or were supported by vague billing descriptions. PRMI now appeals the amount of the award and Ms. Flitton cross-appeals, claiming the district court erroneously

concluded that it lacked jurisdiction to award her appellate fees.

## II. DISCUSSION

In Title VII cases, a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). Thus, to obtain attorney's fees, "a claimant must prove two elements: (1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998). Here, PRMI does not contest Ms. Flitton's status as a prevailing party; rather, it only challenges the reasonableness of the district court's fee award. Because the district court "is in a better position than an appellate court to determine the amount of effort expended and the value of the attorney's services," we review an attorney's fee award for abuse of discretion. *Starrett v. Wadley*, 876 F.2d 808, 825 (10th Cir. 1989).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Robinson*, 160 F.3d at 1281 ("[A] court must begin by calculating the so-called 'lodestar amount' of a fee, . . . [which] is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'"). This calculation, however, does not end the district court's inquiry when, as in this case, the prevailing party succeeds on only some of her claims. *Hensley*, 461 U.S. at 434.

-4-

Indeed, the Supreme Court has instructed that in such cases, two additional questions must be considered: (1) whether the plaintiff's successful and unsuccessful claims were related; and (2) whether the plaintiff's overall level of success justifies a fee award based on the hours expended by plaintiff's counsel. *Id.*

A.    The District Court Did Not Abuse Its Discretion by Awarding Ms. Flitton Fees for the Second Jury Trial

PRMI first argues that the district court should not have awarded Ms. Flitton any fees associated with her counsel's work on the second jury trial because that trial resulted in a "complete defense verdict," and the discrimination and punitive damages claims litigated therein are completely unrelated to Ms. Flitton's successful retaliation claim. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. If, however, a plaintiff presents multiple related claims, "failure on some claims should not preclude full recovery [of attorney's fees] if [the] plaintiff achieves success on a significant, interrelated claim." *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995). Indeed, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440; *see also Robinson*, 160 F.3d at

-5-

1283 (recognizing that many civil rights suits involve related claims and holding that "[i]n such cases, it is inappropriate for a district court to evaluate the individual claims as though they were discrete and severable"). In the context of fee awards, we have held that claims are related if they are based on a common core of facts or are based on related legal theories. *Jane L.*, 61 F.3d at 1512.

The district court concluded that Ms. Flitton's successful retaliation claim and her unsuccessful discrimination and punitive damages claims were interrelated. We agree. As the district court pointed out, in the second jury trial Ms. Flitton pursued punitive damages for the retaliation claim on which she had obtained a jury verdict in the first trial. In these circumstances, it is difficult to distinguish between the time Ms. Flitton's attorneys spent on the retaliation claim generally and the time they spent on her claim for punitive damages based on PRMI's unlawful retaliation. *See Hensley*, 461 U.S. at 435 ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."). Furthermore, during the second jury trial, Ms. Flitton alleged that her termination was discriminatory. This claim concerns a crucial underlying fact that was also addressed in Ms. Flitton's successful retaliation claim—the reason for her termination. Thus, the unsuccessful claims raised by Ms. Flitton in the second jury trial were not distinct in all respects from the successful claims she pursued in the first jury trial, and the district court did not abuse its discretion by refusing to exclude the fees

accrued during the second jury trial from Ms. Flitton's ultimate fee award.

B.    The District Court Did Not Abuse Its Discretion by Refusing to Reduce Ms. Flitton's Fee Award Based on Her Degree of Success

PRMI also contends that the district court erred by not reducing Ms. Flitton's fee award based on her degree of overall success in this lawsuit. The Supreme Court has instructed that in calculating a reasonable fee award, "the most critical factor is the degree of success obtained." *Id.* at 436. Although "[t]here is no precise rule or formula" for assessing the plaintiff's degree of success, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 436, 440.

PRMI contends that because Ms. Flitton succeeded on only one out of five causes of action listed in her initial complaint and received only $354,703.05 in total damages out of the $27,902,065.58 she sought, she obtained a limited degree of overall success and her fee award should have been reduced accordingly. Indeed, PRMI repeatedly emphasizes that Ms. Flitton ultimately received only about one percent of the total damages she sought.

We have rejected the mechanical approach to assessing a plaintiff's degree of overall success that PRMI endorses. In *Jane L.*, we reversed a district court's decision to reduce the lodestar by seventy-five percent based on the plaintiff's success on only two out of eight claims. *Jane L.*, 61 F.3d at 1511; *see also Hensley*, 461 U.S. at 435 n.11 ("We agree with the District Court's rejection of a

-7-

mathematical approach comparing the total number of issues in the case with those actually prevailed upon.") (quotations omitted). There, we held that "the district court must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *Jane L.*, 61 F.3d at 1511.

Here, the district court rejected PRMI's request for a reduction of the fee award based on Ms. Flitton's level of success, concluding that Ms. Flitton "obtained substantial success from the first jury trial," and that "she obtained a substantial amount of damages." *Flitton v. Primary Residential Mortgage, Inc.*, No. 2:03-CV-481-DAK, 2009 WL 13572006, at *5, *8 (D. Utah May 7, 2009). Although Ms. Flitton's ultimate award did not approach the amount of damages she sought, her award of over $350,000 in this Title VII suit was not inconsequential. *See Hensley*, 461 U.S. at 435 n.11 ("Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested."). Accordingly, the district court's assessment of her overall level of success was not an abuse of discretion.

C.    The District Court Did Not Abuse Its Discretion by Refusing to Reduce Ms. Flitton's Fee Award Based on Her Attorneys' Billing Entries

PRMI next argues that the district court erred by not reducing Ms. Flitton's fee award based on her attorneys' allegedly vague and nondescript billing entries.

"Plaintiffs' burden in an application for attorneys fees is to 'prove and establish the reasonableness of each dollar, each hour, above zero.'" *Jane L.*, 61 F.3d at 1510 (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986)). "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. When examining the adequacy of an attorney's billing entries, we are primarily concerned with the district court's ability to evaluate the propriety of the fee request based on the specific billing entries. *See Crumpacker v. Kan. Dep't of Human Res.*, 474 F.3d 747, 757 (10th Cir. 2007) ("The law does not require the district court to reduce its fee award where it finds no difficulty in evaluating the propriety of an attorney's billing."). Indeed, in *Crumpacker*, we affirmed the district court's fee award, which included fees for six billing entries that were entirely blacked out and unreadable, because "the district court specifically found that the blacked out entries cause no problems in determining the validity or propriety of the work performed." *Id.* (quotations and alterations omitted).

Here, the district court conducted a thorough review of Ms. Flitton's attorneys' billing entries and reduced the fee award based on the inadequacy of eleven specific entries. Furthermore, the district court stated, "[w]hile the court does not believe that the entries of Plaintiff's counsel are ideal, it finds most of

the entries adequately descriptive for purposes of reviewing the fee application."

*Flitton*, 2009 WL 1357206, at *6. Accordingly, the district court concluded that

it was able to make a fair assessment of the reasonableness of Ms. Flitton's

claimed fees based on the majority of the billing entries she submitted, and it

refused to award her fees based on specific inadequate entries. After examining

the allegedly vague and nondescript entries emphasized by PRMI, we conclude

that the district court did not abuse its discretion by refusing to further reduce Ms.

Flitton's fee award based on her attorneys' billing entries.

D.    The District Court Correctly Concluded that It Lacked Jurisdiction to

      Award Ms. Flitton Appeal-Related Fees

In her cross-appeal, Ms. Flitton argues that the district court erred by

concluding that it lacked jurisdiction to award her appeal-related fees because she

failed to first request those fees in this court. In *Hoyt v. Robson Cos., Inc.*, 11

F.3d 983, 985 (10th Cir. 1993), we recognized that "an appellate court has

discretion to award attorney's fees on appeal." Accordingly, we established the

general rule that in order for a prevailing party to obtain appeal-related fees, "an

application for [such] fees must first be made to our court." *Id.* Indeed, we

concluded that a district court generally lacks jurisdiction to consider the

propriety of appeal-related fees if the prevailing party does not first seek such

fees on appeal.[1]  *Id.*

In *Crumpacker*, we reaffirmed the *Hoyt* rule, stating that "appeal-related fees . . . must generally be awarded by us."  474 F.3d at 756.  Nevertheless, we recognized a narrow exception for interlocutory appeal-related fees in cases brought under Title VII or other fee-shifting statutes.  *Id.*  Under these limited circumstances, we held that "parties who prevail on interlocutory review in this court, and who subsequently become prevailing parties under Title VII or another fee-shifting provision at the conclusion of merits proceedings, are implicitly entitled to reasonable attorneys' fees related to the interlocutory appeal."  *Id.*

Ms. Flitton asks us to extend *Crumpacker* beyond interlocutory appeals.  She contends that, after *Crumpacker*, all prevailing parties under Title VII are entitled, as a matter of law, to all appeal-related fees; therefore, requesting such fees from this court in the first instance is not necessary.  We reject this broad reading of *Crumpacker*.  First, this extension of *Crumpacker* is inconsistent with

---

[1]We respectfully cannot agree with the dissent's contention that *Hoyt* can simply be disregarded by this subsequent panel.  In *Hoyt*, we noted that "[t]hough we have addressed awards of appeal-related attorneys' fees pursuant to authorizing statutes, we have not previously confronted the *jurisdictional* requirements applicable in applying such fees."  11 F.3d at 984 (emphasis added).  Considering, for the first time in *Hoyt*, the jurisdictional requirements applicable in applying for appellate fees, we went on to "hold that the district court *did not have jurisdiction* to award appeal-related attorneys' fees in this case."  *Id*. at 985 (emphasis added).  Regardless of the propriety of *Hoyt*'s jurisdictional ruling, we are bound by that prior decision.  *See Crumpacker*, 474 F.3d at 755–56 (recognizing that *Hoyt* is "the law of this circuit," and that "the rule of *Hoyt* binds us"); *see also United States v. Walling*, 936 F.2d 469, 472 (10th Cir. 1991) ("One panel of the court cannot overrule circuit precedent.").

the narrow language used in that case. Nowhere in *Crumpacker* did we state or suggest that its rule applies to cases other than those in which a party succeeds on interlocutory appeal and subsequently becomes a prevailing party. Those are not the circumstances of Ms. Flitton's case. Second, Ms. Flitton's reading of *Crumpacker* would effectively strip this court of its discretion to award appeal-related fees in all Title VII cases. That discretion, however, was the fundamental premise on which the *Hoyt* rule was based, *see Hoyt*, 11 F.3d at 985 ("[I]n order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court."), and *Crumpacker* did not (and could not) eviscerate it. *See Crumpacker*, 474 F.3d at 755–56 (recognizing that *Hoyt* is "the law of this circuit," and that "the rule of *Hoyt* binds us"); *see also United States v. Walling*, 936 F.2d 469, 472 (10th Cir. 1991) ("One panel of the court cannot overrule circuit precedent."). Accordingly, as we stated in *Crumpacker*, "[i]t is the law of this circuit that 'absent an explicit statutory provision, in order for us to properly exercise our discretion, an application for appeal-related attorneys' fees must first be made to our court.'" *Crumpacker*, 474 F.3d at 755 (quoting *Hoyt*, 11 F.3d at 985) (alterations omitted). Ms. Flitton never requested appeal-related fees from this court during her prior appeal and she has not requested them at any point during this appeal. Therefore, the district court correctly concluded that it was without authority to grant such fees in the first instance.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.

09-4108, 09-4120, *Flitton v. Primary Residential Mortgage, Inc.*

**McKAY**, concurring in part and dissenting in part.

I respectfully dissent from Section II.A of the majority opinion, in which the court holds that Ms. Flitton was appropriately awarded fees for the unsuccessful claims she raised in the second jury trial because these claims were interrelated to the successful claims she had pursued in the first jury trial. I disagree with this analysis and therefore would reverse and remand for the district court to impose an award excluding fees accrued during Ms. Flitton's entirely unsuccessful second jury trial.

A fee award in a Title VII case is anchored in prevailing party status, 42 U.S.C. § 2000e-5(k), which means that a plaintiff must succeed on at least some significant claim for relief to be entitled to attorney fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Where a plaintiff does not obtain success on all of her claims, "[t]he extent of a plaintiff's success is a crucial factor that the district courts should consider carefully in determining the amount of fees to be awarded," *id.* at 438 n.14, and "no fee may be awarded for services" on an unsuccessful claim that is distinctly different from the successful claims for relief, *id.* at 435. However, when a plaintiff achieves only partial success on interrelated claims, it would be unmanageable or unworkable to separate the hours spent on successful and unsuccessful claims. *See id.* (holding that it may be inappropriate to limit a fee award where claims are interrelated because in such cases it will be "difficult to divide the hours expended on a claim-by-claim

basis"). The courts have therefore developed the interrelatedness rule to cut the Gordian knot, permitting fees to be awarded for the full time spent on the interrelated claims rather than requiring the difficult or even impossible task of separating the time spent on interrelated successful and unsuccessful claims.

In the usual case, this interrelatedness rule is eminently sound. Where the time spent on interrelated claims is inherently separable, however, the application of this rule strikes me as both unnecessary and inconsistent with the purpose behind the statutory provision for fees.

I agree with the majority that the claims in this case are interrelated and, therefore, that Ms. Flitton should be compensated for all of the time her attorneys spent preparing for the first trial, even the time spent on the claims that ultimately turned out to be unsuccessful. In preparing for the first trial, Ms. Flitton's attorneys worked on interrelated successful and unsuccessful claims, and it would be difficult to distinguish between the time spent on the successful retaliation claim and the time spent on the unsuccessful punitive damages and discrimination claims. However, I am not persuaded that Ms. Flitton should be further compensated for the completely unsuccessful pursuit of her punitive damages and discrimination claims on remand. Following our decision on appeal, Ms. Flitton began what was, in effect, a second lawsuit on the remanded claims—an action in which she did not prevail. The fact that these claims were interrelated to another claim on which she had previously succeeded in another proceeding is irrelevant,

-2-

in my view, to the question of whether she should be awarded fees for the inherently separable fees incurred during this unsuccessful proceeding. Under the circumstances of this case, I would hold that the district court abused its discretion by awarding fees for a proceeding in which Ms. Flitton was entirely unsuccessful.

I concur with the remainder of the majority's opinion. I note in particular that, although I find persuasive Judge Gorsuch's argument that the rule stated in *Hoyt* would be more appropriately treated as a procedural rule rather than a jurisdictional barrier, I agree with Judge Tacha that we are not free to ignore our treatment in *Hoyt* of this issue as a jurisdictional one. This issue may warrant further consideration by the *en banc* court, but this panel is currently bound by *Hoyt*'s holding that a district court lacks jurisdiction to award appellate fees in this type of case.

09-4108, 09-4120, *Flitton v. Primary Residential Mortgage, Inc.*

**GORSUCH, J.,** concurring in part and dissenting in part.


I am in full agreement with the bulk of the court's thoughtful opinion. My disagreement is confined to the holding in Section II.D, where the court affirms the district court's determination that it lacked jurisdiction over Ms. Flitton's request for appellate attorney fees. Respectfully, I would hold that the district court possessed jurisdiction over Ms. Flitton's fee request and so would reverse its judgment.

*Facts*

The critical facts are these. Ms. Flitton brought claims for discrimination and retaliation under Title VII. The district court granted judgment as a matter of law (JMOL) against Ms. Flitton on her discrimination claim before the conclusion of trial but at the same time allowed her retaliation claim to go to the jury. After the jury found for Ms. Flitton and awarded $50,000 in damages on her retaliation claim, the district court reversed course, however, and decided to grant JMOL against Ms. Flitton on that claim, too. Ms. Flitton appealed and we reversed the district court's JMOL decisions on both the discrimination and retaliation claims. We also reversed its JMOL decision that she wasn't entitled to punitive damages as a matter of law. But the upshot of our decision was hardly a final judgment; much remained to be done on remand. On Ms. Flitton's discrimination claim, a jury still had to decide its merits (she eventually lost). On her retaliation claim,

we restored the $50,000 verdict she'd won but Ms. Flitton still had to pursue back and front pay questions (she eventually won an additional $304,703.05 in back pay). And the question of punitive damages was revived and left for the jury to decide. When all these matters were finally said and done, Ms. Flitton sought attorney fees as a prevailing party. The district court granted fees for work done by her attorneys in that court, but it held that it lacked jurisdiction to award any fees associated with Ms. Flitton's appeal.

*The Jurisdictional Misnomer*

The court today agrees with and affirms the district court's jurisdictional holding. But how can this be so? How did the district court lack *jurisdiction* to award fees associated with the appeal that led to the restoration of Ms. Flitton's claims and her eventual partial success on remand? The terms of Title VII don't appear to compel such a result. *See* 42 U.S.C. § 2000e-5(k) (instructing simply that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee"). And, to make the assessment of a reasonable fee, courts traditionally wait until the end of the case, when the dust has settled and they can sensibly assess the "results obtained" and the degree of success achieved by the plaintiff. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). So where is it written that a district court lacks *jurisdiction* to award fees, in the normal course at the case's end, for the plaintiff's reasonable efforts in an intervening appeal that was crucial to the ultimate success she eventually obtained in the case?

-2-

The district court and this court submit that *Hoyt v. Robson Cos.*, 11 F.3d 983 (10th Cir. 1993), laid down such a rule. But *Hoyt* merely held that, after winning at trial and successfully defending that victory on appeal, the plaintiff should seek fees associated with the appeal in this court rather than the district court. *Id.* at 984-85. There may be nothing wrong with such a rule as a matter of sound judicial administration and this court's supervisory authority; indeed, at least the Eighth and Eleventh Circuits have adopted a variation of it in their local rules. *See Little Rock Sch. Dist. v. Arkansas*, 127 F.3d 693, 696-97 (8th Cir. 1997); *Gray ex rel. Alexander v. Bostic*, No. 08-15152, slip op. at 14-15 (11th Cir. Aug. 2, 2010). But such a claims processing rule "cannot and does not affect the jurisdiction of the district courts." *Little Rock Sch. Dist.*, 127 F.3d at 696. The jurisdiction of the federal courts is governed by the articles of the Constitution and Acts of Congress, not by administrative claims processing rules.

To be sure, *Hoyt* uses the word "jurisdiction[al]" to describe the nature of its holding, though it does so in passing and without explanation. *See* 11 F.3d at 984-85. And the excessively exuberant use of the word "jurisdiction" to mean many things other than the absence of constitutional or statutory power to adjudicate a matter is by now well known. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) ("'Jurisdiction', it has been observed, is a word of many, too many, meanings . . . ." (quotation marks omitted)); *Rumsfeld v. Padilla*, 542 U.S. 426, 434 n.7 (2004) ("The word 'jurisdiction,' of course, is capable of

-3-

different interpretations."); *Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1260 (10th Cir. 1976) (noting the "conceptional difficulties . . . caused by an overly broad usage of the term 'jurisdictional'"). Neither can the misuse of that term transform what at most might be an administrative error into *ultra vires* conduct. We have previously recognized as much in this very context, holding that the failure to follow administrative rules governing fee applications may be error but not extra-jurisdictional behavior. *See Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1133 (10th Cir. 2001) (holding "the district court lacked authority, *not jurisdiction*, to award appellate fees" already denied by this court (emphasis added)); *see also Little Rock Sch. Dist.*, 127 F.3d at 697 (analyzing failure to follow administrative rule for abuse of discretion, not for lack of jurisdiction).

From all this, it seems plain that, if any problem lurks here, it can't be a *jurisdictional* one. Congress's statute does not deprive the district court of authority to issue an award of appellate fees. To the contrary, Title VII's very point is to entitle prevailing civil rights plaintiffs to their reasonable attorney fees. It is not for us to undo that legislative judgment by erecting new and dubious faux-jurisdictional hurdles to recovery. Because the district court erred in holding itself without jurisdiction to award fees, I would reverse and respectfully cannot join Section II.D. of the majority's opinion today.

*From Jurisdiction to Claims Processing*

Recognizing that the district court's holding that it lacked *jurisdiction* is in

error, one might try to re-conceive its decision as resting on the claims processing rule that appellate fees should be awarded by the court of appeals, not the district court. Of course this isn't the basis of the district court's holding or the court's decision today. But even if it were, it would be insufficient to sustain the denial of fees in this particular case.

When it comes to the questions whether and when a plaintiff may seek appellate fees from district courts, we've sent mixed messages. In *Hoyt*, the plaintiff won in the district court and successfully defended her judgment on appeal. Because of this, everything needed to determine whether plaintiff qualified as a prevailing party as well as the degree of her success and whether she achieved success on all of her claims, the critical *Hensley* inquiries, was before us. We were well equipped in these circumstances to deal with a fee request for work done in connection with the appeal and we held that, in these circumstances, appellate fee award applications are best directed to us. Yet, in *Crumpacker v. Kansas Department of Human Resources*, 474 F.3d 747, 756 (10th Cir. 2007), we affirmed a district court's fee award that included fees associated with the plaintiff's defense of an interlocutory appeal. We did so explaining that the appeal in question didn't come at the end of the case (as in *Hoyt*) but in the middle of things, before the case reached its end and before the *Hensley* inquiries (was plaintiff a prevailing party? what degree of success did she achieve?) could be completed, or even begun. In these circumstances, we held it *was* appropriate

for the district court to award appellate fees. *Id.* at 756.

Given the mixed messages we've sent about the propriety of district courts awarding appellate fees, what is a plaintiff — or a district court — to do? Especially where, as here, the case falls somewhere in between *Hoyt* and *Crumpacker*? Unlike *Hoyt*, the appeal in this case didn't come at the end of all trial court proceedings, when all the information necessary to undertake the *Hensley* inquiries was before us. In Ms. Flitton's appeal, there's simply no way we could've awarded fees; too much remained to be done on remand before anyone could know what degree of success she would ultimately obtain. But unlike *Crumpacker*, the appeal in this case did resolve at least one *Hensley* question: it made clear that Ms. Flitton *was* a prevailing party by reinstating the jury's verdict in her favor on the retaliation claim, even though the degree of her success couldn't be ascertained until after further proceedings on remand. No doubt, a great many other appeals from JMOL decisions — or summary judgment, or dismissals under Fed. R. Civ. P. 12(b) — will fall in the cracks between *Hoyt* and *Crumpacker*, as this one does. Our mixed messages, then, leave a great many cases in a legal limbo.

While certain other circuits, like the Eighth and Eleventh, have adopted formal rules of court to alert potentially prevailing parties where to file their attorney fee claims, we haven't. Perhaps we should. But in the absence of a clear claims processing rule or case law precedent controlling the plaintiffs'

circumstances, we should not strain to deny fees. Congress has directed the federal courts to calculate a fair award for the prevailing party in civil rights cases. It would be a "procedural contortion," in defiance of that statutory mandate to deny a prevailing plaintiff her fees simply for failing to imagine in advance what administrative claims processing rule we might adopt. *Little Rock Sch. Dist.*, 127 F.3d at 697. If the plaintiff hasn't defied a clearly applicable rule or precedent, she should not be denied the fees Congress has authorized. Unless we afford litigants the benefit of clarity, they should receive the benefit of the doubt.

Not only do we lack any precedent or rule requiring plaintiffs in Ms. Flitton's circumstance to seek fees in the first instance from us. Neither is it at all clear why we should *want* to adopt such a claims processing procedure. While Ms. Flitton's appeal did answer the threshold *Hensley* inquiry, establishing her as a prevailing party, it left the question what claims she would ultimately succeed on, as well as the degree of success she'd ultimately achieve, undecided — discernable only after extensive further proceedings in the district court. In such circumstances (unlike those in *Hoyt*), a rule requiring a plaintiff to apply for appellate fees from us would be pointless. We could do no more than remand the fee matter, along with the merits, to the district court for resolution at the end of its proceedings. We could order, then, no more than what Ms. Flitton herself sought when she applied for fees at the conclusion of her case. The law does not

normally require people to do pointless things — and surely it shouldn't do so. Yet, requiring a plaintiff in Ms. Flitton's shoes to file a piece of paper with us seeking fees at the time of her appeal could be no more than that: at best, a pointless exercise; at worst, a hidden trap to ensnare the unwary and deny them what Congress has said they should receive.

The court today worries that allowing a district court to award appellate fees in this case would risk "strip[ping] this court of its discretion to award appeal-related fees." Maj. Op. at 12. But the court's concern seems to presume that this court has some rule absolutely forbidding district courts from considering appellate fees, which *Crumpacker* makes manifest we don't. And its worry proves too much because it would require us not just to deny fees here but also to overrule *Crumpacker*, which we can't. Besides, allowing the district court to assess fees in this case would hardly leave this court powerless: we always possess the power to review on appeal the reasonableness of any award the district court may authorize (indeed, in *Crumpacker* we held that we will review the district court's award of appellate fees *de novo*, 474 F.3d at 756). It's unclear what's wrong with that arrangement.

From Section II.D, I respectfully dissent.