GORSUCH, Circuit Judge,
concurring in part and dissenting in part.
I am in full agreement with the bulk of the court’s thoughtful opinion. My disagreement is confined to the holding in Section II.D, where the court affirms the district court’s determination that it lacked jurisdiction over Ms. Flitton’s request for appellate attorney fees. Respectfully, I would hold that the district court possessed jurisdiction over Ms. Flitton’s fee request and so would reverse its judgment.

Facts

The critical facts are these. Ms. Flitton brought claims for discrimination and retaliation under Title VII. The district court granted judgment as a matter of law (JMOL) against Ms. Flitton on her discrimination claim before the conclusion of trial but at the same time allowed her retaliation claim to go to the jury. After the jury found for Ms. Flitton and awarded $50,000 in damages on her retaliation claim, the district court reversed course, however, and decided to grant JMOL against Ms. Flitton on that claim, too. Ms. Flitton appealed and we reversed the district court’s JMOL decisions on both the discrimination and retaliation claims. We also reversed its JMOL decision that she wasn’t entitled to punitive damages as a matter of law. But the upshot of our *1182 decision was hardly a final judgment; much remained to be done on remand. On Ms. Flitton’s discrimination claim, a jury still had to decide its merits (she eventually lost). On her retaliation claim, we restored the $50,000 verdict she’d won but Ms. Flitton still had to pursue back and front pay questions (she eventually won an additional $304,703.05 in back pay). And the question of punitive damages was revived and left for the jury to decide. When all these matters were finally said and done, Ms. Flitton sought attorney fees as a prevailing party. The district court granted fees for work done by her attorneys in that court, but it held that it lacked jurisdiction to award any fees associated with Ms. Flitton’s appeal.

The Jurisdictional Misnomer

The court today agrees with and affirms the district court’s jurisdictional holding. But how can this be so? How did the district court lack jurisdiction to award fees associated with the appeal that led to the restoration of Ms. Flitton’s claims and her eventual partial success on remand? The terms of Title VII don’t appear to compel such a result. See 42 U.S.C. § 2000e-5(k) (instructing simply that “the court, in its discretion, may allow the prevailing party ... a reasonable attorney’s fee”). And, to make the assessment of a reasonable fee, courts traditionally wait until the end of the case, when the dust has settled and they can sensibly assess the “results obtained” and the degree of success achieved by the plaintiff. Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). So where is it written that a district court lacks jurisdiction to award fees, in the normal course at the case’s end, for the plaintiffs reasonable efforts in an intervening appeal that was crucial to the ultimate success she eventually obtained in the case?
The district court and this court submit that Hoyt v. Robson Cos., 11 F.3d 983 (10th Cir.1993), laid down such a rule. But Hoyt merely held that, after winning at trial and successfully defending that victory on appeal, the plaintiff should seek fees associated with the appeal in this court rather than the district court. Id. at 984-85. There may be nothing wrong with such a rule as a matter of sound judicial administration and this court’s supervisory authority; indeed, at least the Eighth and Eleventh Circuits have adopted a variation of it in their local rules. See Little Rock Sch. Dist. v. Arkansas, 127 F.3d 693, 696-97 (8th Cir.1997); Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1043-44 (11th Cir.2010). But such a claims processing rule “cannot and does not affect the jurisdiction of the district courts.” Little Rock Sch. Dist., 127 F.3d at 696. The jurisdiction of the federal courts is governed by the articles of the Constitution and Acts of Congress, not by administrative claims processing rules.
To be sure, Hoyt uses the word “jurisdiction[al]” to describe the nature of its holding, though it does so in passing and without explanation. See 11 F.3d at 984-85. And the excessively exuberant use of the word “jurisdiction” to mean many things other than the absence of constitutional or statutory power to adjudicate a matter is by now well known. See Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (“ ‘Jurisdiction’, it has been observed, is a word of many, too many, meanings .... ” (quotation marks omitted)); Rumsfeld v. Padilla, 542 U.S. 426, 434 n. 7, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) (“The word ‘jurisdiction,’ of course, is capable of different interpretations.”); Dartt v. Shell Oil Co., 539 F.2d 1256, 1260 (10th Cir.1976) (noting the “conceptional difficulties ... caused by an overly broad usage of the term ‘jurisdictional’ ”). Neither can the misuse of that term transform what at most might be an administrative *1183 error into ultra vires conduct. We have previously recognized as much in this very context, holding that the failure to follow administrative rules governing fee applications may be error but not extra-jurisdictional behavior. See Huffman v. Saul Holdings Ltd. P’ship, 262 F.3d 1128, 1133 (10th Cir.2001) (holding “the district court lacked authority, not jurisdiction, to award appellate fees” already denied by this court (emphasis added)); see also Little Rock Sch. Dist., 127 F.3d at 697 (analyzing failure to follow administrative rule for abuse of discretion, not for lack of jurisdiction).
From all this, it seems plain that, if any problem lurks here, it can’t be a jurisdictional one. Congress’s statute does not deprive the district court of authority to issue an award of appellate fees. To the contrary, Title VII’s very point is to entitle prevailing civil rights plaintiffs to their reasonable attorney fees. It is not for us to undo that legislative judgment by erecting new and dubious faux-jurisdictional hurdles to recovery. Because the district court erred in holding itself without jurisdiction to award fees, I would reverse and respectfully cannot join Section II.D. of the majority’s opinion today.

From Jurisdiction to Claims Processing

Recognizing that the district court’s holding that it lacked jurisdiction is in error, one might try to re-eonceive its decision as resting on the claims processing rule that appellate fees should be awarded by the court of appeals, not the district court. Of course this isn’t the basis of the district court’s holding or the court’s decision today. But even if it were, it would be insufficient to sustain the denial of fees in this particular case.
When it comes to the questions whether and when a plaintiff may seek appellate fees from district courts, we’ve sent mixed messages. In Hoyt, the plaintiff won in the district court and successfully defended her judgment on appeal. Because of this, everything needed to determine whether plaintiff qualified as a prevailing party as well as the degree of her success and whether she achieved success on all of her claims, the critical Hensley inquiries, was before us. We were well equipped in these circumstances to deal with a fee request for work done in connection with the appeal and we held that, in these circumstances, appellate fee award applications are best directed to us. Yet, in Crumpacker v. Kansas Department of Human Resources, 474 F.3d 747, 756 (10th Cir.2007), we affirmed a district court’s fee award that included fees associated with the plaintiffs defense of an interlocutory appeal. We did so explaining that the appeal in question didn’t come at the end of the case (as in Hoyt) but in the middle of things, before the case reached its end and before the Hensley inquiries (was plaintiff a prevailing party? what degree of success did she achieve?) could be completed, or even begun. In these circumstances, we held it was appropriate for the district court to award appellate fees. Id. at 756.
Given the mixed méssages we’ve sent about the propriety of district courts awarding appellate fees, what is a plaintiff — or a district court — to do? Especially where, as here, the case falls somewhere in between Hoyt and Crumpacker? Unlike Hoyt, the appeal in this case didn’t come at the end of all trial court proceedings, when all the information necessary to undertake the Hensley inquiries was before us. In Ms. Flitton’s appeal, there’s simply no way we could’ve awarded fees; too much remained to be done on remand before anyone could know what degree of success she would ultimately obtain. But unlike Crumpacker, the appeal in this case did resolve at least one Hensley question: it made clear that Ms. Flitton was a prevailing party by reinstating the jury’s ver *1184 diet in her favor on the retaliation claim, even though the degree of her success couldn’t be ascertained until after further proceedings on remand. No doubt, a great many other appeals from JMOL decisions — or summary judgment, or dismissals under Fed.R.Civ.P. 12(b) — will fall in the cracks between Hoyt and Crumpacker, as this one does. Our mixed messages, then, leave a great many cases in a legal limbo.
While certain other circuits, like the Eighth and Eleventh, have adopted formal rules of court to alert potentially prevailing parties where to file their attorney fee claims, we haven’t. Perhaps we should. But in the absence of a clear claims processing rule or case law precedent controlling the plaintiffs’ circumstances, we should not strain to deny fees. Congress has directed the federal courts to calculate a fair award for the prevailing party in civil rights cases. It would be a “procedural contortion,” in defiance of that statutory mandate to deny a prevailing plaintiff her fees simply for failing to imagine in advance what administrative claims processing rule we might adopt. Little Rock Sch. Dist., 127 F.3d at 697. If the plaintiff hasn’t defied a clearly applicable rule or precedent, she should not be denied the fees Congress has authorized. Unless we afford litigants the benefit of clarity, they should receive the benefit of the doubt.
Not only do we lack any precedent or rule requiring plaintiffs in Ms. Flitton’s circumstance to seek fees in the first instance from us. Neither is it at all clear why we should want to adopt such a claims processing procedure. While Ms. Flitton’s appeal did answer the threshold Hensley inquiry, establishing her as a prevailing party, it left the question what claims she would ultimately succeed on, as well as the degree of success she’d ultimately achieve, undecided — discernable only after extensive further proceedings in the district court. In such circumstances (unlike those in Hoyt), a rule requiring a plaintiff to apply for appellate fees from us would be pointless. We could do no more than remand the fee matter, along with the merits, to the district court for resolution at the end of its proceedings. We could order, then, no more than what Ms. Flitton herself sought when she applied for fees at the conclusion of her case. The law does not normally require people to do pointless things — and surely it shouldn’t do so. Yet, requiring a plaintiff in Ms. Flitton’s shoes to file a piece of paper with us seeking fees at the time of her appeal could be no more than that: at best, a pointless exercise; at worst, a hidden trap to ensnare the unwary and deny them what Congress has said they should receive.
The court today worries that allowing a district court to award appellate fees in this case would risk “strip[ping] this court of its discretion to award appeal-related fees.” Maj. Op. at 1180. But the court’s concern seems to presume that this court has some rule absolutely forbidding district courts from considering appellate fees, which Crumpacker makes manifest we don’t. And its worry proves too much because it would require us not just to deny fees here but also to overrule Crumpacker, which we can’t. Besides, allowing the district court to assess fees in this case would hardly leave this court powerless: we always possess the power to review on appeal the reasonableness of any award the district court may authorize (indeed, in Crumpacker we held that we will review the district court’s award of appellate fees de novo, 474 F.3d at 756). It’s unclear what’s wrong with that arrangement.
From Section II.D, I respectfully dissent.